MARTHA D. KNOWLES *et al. vs.* EDWIN KNOWLES, JR., *et al.*

PROVIDENCE—DECEMBER 23, 1904.

PRESENT: Tillinghast, C. J., Douglas and Dubois, JJ.

(1) *Covenants. Deeds.*

A. made a deed of land to B. as security for B.'s endorsement of A.'s note, and took from B. a written agreement providing that "if said note is paid, then I agree to retransfer said land on demand." After the death of A., C., the executrix of A., paid the indebtedness to B. and requested a return of the deed, which B. stated he could not find. B. deceased, and D., administrator of B., found the deed, refused to deliver it to C., and recorded it. Plaintiffs, the devisees of A., brought covenant against defendants the heirs at law of B. On demurrer:—

*Held,* that, as the title passed wholly from A. to B., and the agreement did not bind or run to the heirs and assigns of the parties, there was no privity with respect to the land between the parties plaintiff and defendant.

*Held,* further, that the executrix of A. took the covenant merely as a chose in action which bound the covenantor personally, but not his heirs or devisees. *Knowles* v. *Knowles,* 25 R. I., 464, explained.

(2) *Covenants. Deeds.*

The personal covenant of an ancestor does not bind his heirs unless they are named in the deed.

COVENANT. Heard on demurrer to declaration, and demurrer sustained.

DOUGLAS, J. This is an action of covenant brought by the executrix and devisees of John C. Knowles against the heirs at law of Edwin Knowles, alleging that the defendants have broken a certain agreement under seal, made by their ancestor, and seeking damages therefor.

The case is now before us upon demurrer to the declaration.

Such of the facts alleged as are pertinent upon the questions raised by the demurrer are briefly as follows:

John C. Knowles, being the owner of a burial lot in Swan Point Cemetery, conveyed a certain specified portion of the same to Edwin Knowles by his deed in ordinary form, and at the same time Edwin Knowles executed and delivered to John C. Knowles an instrument, under his hand and seal, in the words and figures following:

"Received of John C. Knowles a transfer of the southeast end of group 117 in Swan Point Cemetery, containing about 2,000 feet, as collateral security for the endorsement of his note dated April 20, 1889, for the sum of sixteen hundred dollars. Now therefore, if said note is paid, or any renewals of the same, saving me harmless from all cost or damage by reason of said endorsement, then I agree to retransfer said land as afore-described on demand. Providence, July 18, 1889.

"Witness my hand and seal,

"(signed)  EDWIN KNOWLES.  (L. S.)

"In presence of Louis J. Doyle."

Neither the deed nor the agreement was recorded during the lifetime of the makers. John C. Knowles died February 21, 1894, leaving a will, which was afterwards duly admitted to probate, whereby he gave all his property and estate to the plaintiffs and appointed the plaintiff Martha D. Knowles his executrix. The plaintiff Martha D. Knowles, May 2, 1896, paid to Edwin Knowles the entire indebtedness owed to him by John C. Knowles, deceased, and requested him to deliver to her the deed of John C. Knowles. He expressed his willingness to do so, but said he could not find it.

March 22, 1900, Edwin Knowles died intestate, leaving the defendants his sole heirs at law, and subsequently the defendant

Edwin Knowles, Jr., was appointed administrator of his estate and duly qualified as such.

The plaintiffs, in April, 1902, requested the son, Edwin Knowles, Jr., to deliver to them the deed, which had come to his possession, but he refused to do so, and on April 21st, 1902, he caused the same to be recorded in the records of Swan Point Cemétery.

The plaintiffs thereupon brought their action of trespass on the case against these defendants, alleging damages to them from the recording of the deed and charging also a conversion of the deed. This case, after jury trial, came before this division on a petition for a new trial, and the verdict of the jury was set aside and judgment directed for the defendants. The opinion of the court is reported in 25 R. I. 464.

In that opinion the court use this language: "The only ground upon which the plaintiffs could possibly recover would be upon a refusal to retransfer after demand; but this remedy would be in an action on the covenant, and not in tort."

The court here mention an action on the covenant as an hypothetical remedy, but, not having such an action before them, the suggestion was not given the form and has not the weight of a positive assertion. It is undoubtedly true that the covenant is the sole basis of the plaintiff's right to any relief. The foundation of the claim is contract, not tort. That was sufficient for the decision of the case before the court, and that was all that the language of the opinion imports. Whether the action of covenant is the proper proceeding to pursue, or whether or not the common law affords any remedy in the premises, are questions which the court have not decided.

After the rendering of this opinion the plaintiffs made formal demand upon the defendants to reconvey to them the land in question, and upon their refusal to do so brought this action in covenant for damages.

(1) The substantial question raised by the demurrer is whether the action will lie. We start with the proposition that, as between the original parties to the agreement, a breach of it would give to the covenantee an action at common law for damages, and such an action would undoubtedly lie between

the present parties if the agreement had in terms bound the heirs and assigns of the covenantor and run to the heirs and assigns of the covenantee. As it is only a covenant between two persons, not in terms binding or running to their representatives, the question arises whether the common law transmits the duty on the one side and the right on the other.

The plaintiffs' counsel has apparently searched the reports very diligently, but has referred us to no precedent for such an action. He cites many cases in which covenants in leases have been enforced by the assignee of the lessee against the owner of the reversion, whether the covenant was in terms assignable or not. A lessee is in privity of title with the owner of the reversion, and many covenants if contained in a lease are assignable by force of law. They are said to run with the land into whosesoever hands it comes. Such are, for example, covenants for quiet enjoyment, for further assurance, for renewal, of warranty, to repair, and to convey. Kerr on Real Property, § 1221.

But this is not the case of a lease. As was said by Lord Brougham in *Keppell* v. *Bailey*, 2 M. & K. 517, 534: "The parties did not stand in the relation of lessor and lessee towards each other; and there is, therefore, no reversionary interest now in the covenantees to which the right claimed against the assignees of the covenantors may be annexed."

As viewed by the common law, the deed divested the plaintiffs' ancestor of all title. Upon its delivery the defendants' ancestor became the absolute owner and the plaintiffs held only a conditional agreement of reconveyance. The plaintiffs' ancestor after his conveyance owned no land for the covenant to run with, and the plaintiffs inherited no land from their husband and father which was affected by the covenant. His executrix took merely the covenant as a chose in action which bound the covenantor personally but not his heirs or devisees. There is no privity with respect to this land between the plaintiffs and the defendants. As was said in the former opinion, the title wholly passed to the grantee, making a reconveyance necessary. This is the character which the parties saw fit to impress upon their transaction.

(2)    The rule is as well established as any in the books that the personal covenant of an ancestor does not bind his heirs, unless they are named therein. The court say, in *Lawrence v. Hayden*, 4 Bibb. .229: "The declaration not having alleged that the heirs were named or bound in the deed, is fatally defective; for where the heir is not named in the deed, he is not liable at common. law." To the same effect are *Lloyd v. Thursby*, 9 Mod. 463; *McDonald* v. *McElroy*, .60 Cal. .496; *Maynard* v. *Polhemus*, 74 Cal. 141, 143; 2 Waits Ac. & .Def. 397; 5 Cyc. 821, 2 a; 11 Cyc. 1058, 1102.

If, in the view of a court of equity, the transaction between the parties constituted a mortgage, if John C. Knowles retained the equity of redemption which as an equitable estate was devised to the plaintiffs, if after the payment of the debt Edwin Knowles held the legal title upon the naked trust to convey it to the plaintiffs on demand, and if the defendants inherited the bare legal title subject to the same trust, these considerations are not available in a court of common law and furnish no foundation for this action.

The defendants, when sued in a court of common law, may well say: we have made no covenant, and our ancestor made none for us; the agreement sued upon is not our deed.

The demurrer must be sustained.

*Irving Champlin,* for plaintiffs.

*David S. Baker and Lewis A. Waterman,* for defendants.